**Ruth CHRISTIE**

v.

**The UNITED STATES.**

**No. 486–73.**

United States Court of Claims.

July 11, 1975.

Elsa R. Kaufman, Washington, D.C., attorney of record, for plaintiff.

Iraline G. Peniston, Washington, D.C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before SKELTON, KUNZIG, and BENNETT, Judges.

KUNZIG, Judge:

In this civilian employment action, the court is confronted with a single legal question: whether plaintiff was wrongfully separated from government service, by means of a coerced resignation. We hold that, as a matter of law, plaintiff's resignation was voluntary.

The factual setting in which this case arises may be briefly summarized as follows: Plaintiff, a 5-point veteran's preference employee, had continuously served in the Navy Department since 1943. From 1943 until August 1946, plaintiff was on active duty in the United States Naval reserve. At the end of World War II, she was converted to civilian status and remained a civilian employee until the effective date of her resignation, March 10, 1972. At the time of her separation, plaintiff was employed as a Technical Data Management Specialist, GS–13, with the Naval Weapons Engineering Support Activity, located at the Washington, D.C. Navy Yard.

On November 22, 1971, plaintiff was issued an Advance Notice of Proposed Removal for "Attempting to Inflict Bodily Injury to Your Supervisor—First Offense." This charge stemmed from an alleged striking incident during a meeting on November 15, 1971, where plaintiff allegedly made threatening gestures toward her supervisor. Plaintiff submitted a written reply denying the charge on December 8, 1971.

By letter dated February 23, 1972, plaintiff was notified of the agency's decision to separate her for cause, effective February 25, 1972. However, since the installation was undergoing a reduction-in-force (RIF), the effective date of plaintiff's discharge was extended to give her the opportunity to explore the alternative of voluntary resignation via Discontinued Service Retirement. While it is disputed as to which side initiated the extension request, the effective date of plaintiff's proposed removal was reset to March 3, 1972.

The period between February 25 and March 3, 1972 was marked by a series of exchanges between the agency and plaintiff. Plaintiff attempted to submit a resignation conditioned by her allegation that it was being tendered under duress. The agency informed plaintiff it could not accept such a conditional resignation because it was not "in consonance with the most current controlling regulation" and advised plaintiff that applicable regulations mandate that such resignations be voluntary. On March 3, 1972, plaintiff tendered a resignation free of protest and submitted an application for

discontinued service retirement, both effective March 10, 1972. Plaintiff's resignation and application for discontinued service retirement were processed and approved by the agency and plaintiff was separated from the Navy Department effective March 10, 1972.

Subsequent to her resignation, plaintiff appealed to the Appeals Examining Office (AEO) of the Civil Service Commission (CSC). In her March 25, 1972 letter, plaintiff switched back to her earlier position that her resignation was involuntary, described its effect as an "adverse action" taken against her, and requested a hearing before the AEO. The AEO held, in a decision issued on June 12, 1972, that plaintiff's separation by resignation was voluntary. Stating that voluntary separations are not within the CSC's appellate jurisdiction, the AEO denied plaintiff's request for a hearing. The decision of the AEO was affirmed by the CSC Board of Appeals and Review (BAR) on December 8, 1972. Having exhausted her administrative remedies, plaintiff filed the present action in this court on December 19, 1973, seeking back pay, reinstatement and other relief.

This case, in its present posture, is before us on cross-motions for summary judgment. Defendant's motion is grounded on plaintiff's failure to establish by objective standards that her resignation was obtained by duress. Plaintiff's cross-motion for summary judgment is premised on the view that the totality of events surrounding her resignation evidences a denial of any viable choice but to resign and thus, as a matter of law, she is entitled to judgment. For the reasons stated below, we conclude that plaintiff's allegation of involuntary resignation fails as a matter of law and therefore dismiss the petition.

■ This court has enunciated a principle, now firmly established, for determining whether a resignation is voluntarily tendered. The element of voluntariness is vitiated only when the resignation is submitted under duress brought on by Government action. *Leone* v.

*United States*, 204 Ct.Cl. 334, 339 (1974). The tripart test for such duress is:

* * * (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the the result of coercive acts of the opposite party. * * * *Fruhauf Southwest Garment Co.* v. *United States*, 111 F.Supp. 945, 951, 126 Ct.Cl. 51, 62 (1953).

■■ Employee resignations are presumed to be voluntary. This presumption will prevail unless plaintiff comes forward with sufficient evidence to establish that the resignation was involuntarily extracted. Plaintiff had the opportunity to rebut this presumption before the CSC. This court, under the doctrine of exhaustion of administrative remedies, must restrict its review to the factual matters presented below. *See Haynes* v. *United States*, 418 F.2d 1380, 1383, 190 Ct.Cl. 9, 12–13 (1969).

■ Upon review of the facts as they appear in the record before the CSC, it is clear that plaintiff has failed to show that her resignation was obtained by external coercion or duress. Duress is not measured by the employee's subjective evaluation of a situation. Rather, the test is an objective one. *McGucken* v. *United States*, 407 F.2d 1349, 1351, 187 Ct.Cl. 284, 289, cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); *Pitt* v. *United States*, 190 Ct.Cl. 506, 513, 420 F.2d 1028, 1032 (1970). While it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports CSC's finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff *had a choice.* She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resigna-

tion. Federal Personnel Manual Supp. 752–1, subchapter S1–2a(3).

This court has repeatedly upheld the voluntariness of resignations where they were submitted to avoid threatened termination for cause. *Pitt v. United States, supra* (termination resulting from possible criminal prosecution); *Cosby v. United States,* 417 F.2d 1345, 189 Ct.Cl. 528 (1969) (termination for gross insubordination); *Autera v. United States,* 389 F.2d 815, 182 Ct.Cl. 495 (1968) (termination for incompetence). Of course, the threatened termination must be for good cause in order to precipitate a binding, voluntary resignation. *Autera v. United States, supra* 389 F.2d at 817, 182 Ct.Cl. at 499. But this "good cause" requirement is met as long as plaintiff fails to show that the agency knew or believed that the proposed termination could not be substantiated. *Leone v. United States, supra* 204 Ct.Cl. at 340. Although plaintiff has attempted to impugn the agency's motivation for proceeding with her proposed termination, plaintiff does not deny that the incident which formed the basis of the charge against her had taken place (although she does assert the so-called assault was nothing more than an "inadvertent touching"). This admission is fatal to plaintiff's attempt to impeach the agency's decision to terminate her for cause. Whether this charge could have been sustained had plaintiff chosen to appeal her discharge for cause is irrelevant. What is relevant is that the admission of this incident is prima facie evidence that an arguable basis for discharge existed.

Plaintiff's suggestion that her resignation was obtained as a result of agency deception is completely unsupported by the record. It is true that CSC regulations recognize that a normally voluntary action is transformed into an involuntary one if obtained by agency misrepresentation. Federal Personnel Manual Supp. 752–1, subchapter S1–2a(1). But reliance on the misrepresentation is an essential element. Here, plaintiff not only fails to show such re-

liance, her own words completely repudiate it. In her request for consideration to the CSC AEO, dated March 25, 1972, plaintiff did allege that the agency misrepresented the consequences of a dismissal for cause regarding retirement/annuity rights. But in the same sentence, plaintiff concedes that the alleged misrepresentations were corrected "in later explorations of alternatives" before she submitted her disputed resignation. This concession clearly negates any suggestion that plaintiff relied on any purported agency misrepresentations.

Plaintiff's argument that her separation should be voided because she was not permitted to set the effective date of her resignation has no merit. When plaintiff signed the necessary forms requesting her separation from the rolls and her request for discontinued service retirement, she adopted the date contained therein as her own. This ratification, signified by her signature, clearly satisfies the requirements that plaintiff set her own effective date of resignation.

Since plaintiff has failed to present an adequate claim of coerced resignation, CSC properly declined to accept her appeal. Voluntary separations are not adverse actions and are thus not appealable to the CSC. *See* 5 C.F.R. § 752–201(b).

At oral argument, plaintiff's counsel raised the issue of whether CSC's denial of a requested hearing compels reinstatement. Our answer is that it does not.

It would be folly to suggest that any time a hearing is requested, an agency must grant it. Yet, in effect, that is what plaintiff seems to imply. What plaintiff overlooks is that the legal classification of her separation is determinative of her entitlement to a hearing.

The Supreme Court has recognized that non-probationary Federal employees have a property interest in their jobs. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). As such, employees are entitled to a due process hearing if the Government initiates an

adverse action to remove them. However, when an employee voluntarily relinquishes her property interest, her separation cannot be considered an adverse action. Since there was no adverse action in this case, a hearing is not required. *McGucken* v. *United States, supra,* 407 F.2d at 1352, 187 Ct.Cl. at 289. The underlying rationale is that a Government-initiated removal (adverse action) is analogous to a "taking" of a property interest; an employee-initiated separation is not. *Compare Board of Regents* v. *Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) *with Perry* v. *Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Since plaintiff voluntarily relinquished her property interest, the CSC correctly denied her hearing request.

In summary, we hold the CSC properly declined to accept plaintiff's appeal because, as a matter of law, her resignation was voluntary. We further conclude CSC's denial of plaintiff's hearing request was proper.

Accordingly, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.

BENNETT, Judge (concurring):

I join in the opinion and conclusion of Judge KUNZIG. In response to the dissent, however, I wish to add a few comments.

The dissent questions the substantiality of the charge against plaintiff upon which the proposed removal was based. The incident was described in the "Advanced Notice of Proposed Removal," as follows:

(2) *Incident.* On 15 November 1971, at approximately 0900, you came into my office with an information list, to describe certain problems you had encountered while working with the Engineering Change Proposal (ECP) program. You explained that you receive information over the phone from AIR–01A6 on Monday morning, and then relay it, via phone, to NAVAIRTECH-SERVFAC. You complained that this took up a great deal of your time. I stated that assuming that the girl in AIR–01A6 reads from a list, she could send the data direct to NAVAIR-TECHSERVFAC over the telecopier, and they, in turn, could phone back a confirmation directly to AIR–01A6. You replied in a disgusted manner that the girl at AIR–01A6 had better things to do (or words to that effect). I stated that I would still like to know if she could do it, whereupon you stated "Well, I won't ask her" (or words to that effect), and proceeded to walk out. I said, "Ruth, I think you're being unreasonable." At that, you turned and approached where I was sitting at my desk. You stood over me and said in a somewhat strained voice, "You drive me nuts—you bastard, you're driving me nuts" (or words to that effect). At the same time, you swung at my face with your right hand doubled into a fist, which I stopped with my hands. I became quite concerned, not only for you and your apparant (sic) loss of self-control, but for my own physical safety as well. I asked, "What's wrong with you Ruth?" You just looked at me and attempted to pound me with your fists, perhaps five or six times. None of the blows hit my head or face, all fell on my hands and forearms with which I warded off the blows. Although these blows were not overly severe in nature, they were never-the-less, in my opinion, intended to inflict bodily harm to me. You then turned and left the office without uttering anything further. Mr. Harold Booher, Publications Presentation Methods Specialist, was in the office at the time and observed the incident, and more specifically, your actions immediately prior to leaving the room. I immediately turned to Mr. Booher and asked him to go see if you were all right. I indicated to him that I was worried about you, but that I was afraid that if I went in to see you personally, that it would only upset you more. Mr. Booher did go in and

ask you if you were all right, to which you replied that you were.

Perhaps the notion of plaintiff's inflicting bodily injury on her male supervisor is not persuasive, but the striking of a supervisor in anger is surely intolerable in any employment relationship and is a valid basis for removal for cause whether the blows resulted in injury or not.

Furthermore, the incident was witnessed by a third party. Clearly, therefore, this is not a case in which the agency knew or believed that the proposed termination could not be substantiated.

Nor was the resignation the result of deception. In her appeal to the Civil Service Commission, plaintiff wrote:

> * * * The false information that removal for misconduct would result in sacrifice of all retirement/annuity rights was originally offered, *but was corrected in later exploration of alternatives.* [Emphasis supplied.]

Surely plaintiff cannot now be permitted to contradict that statement.

Finally, the dissent is mistaken in suggesting that defendant has admitted the allegations made by plaintiff, to wit, that the incident was contrived and that she was deceived, intimidated, and thereby coerced to resign. Defendant nowhere admits these allegations and, of course, makes no such admission by filing a motion for summary judgment as contrasted to a motion for dismissal. Defendant relies on the various documents in the record which show as a matter of law that plaintiff's resignation was voluntary. With regard to the affidavits filed with plaintiff's brief, defendant correctly notes that

> * * * the affidavits filed with plaintiff's brief should be disregarded to the extent they seek to raise new factual matters not presented to The Commission. Consideration of such new materials by this Court is barred by the doctrine requiring exhaustion of administrative remedies. *Haynes v. United States,* 190 Ct.Cl. 9, 12–13 (1969); *Pine v. United States,* 178 Ct.Cl. 146, 148, 371 F.2d 466–68 (1967);

*Long v. United States,* 148 Ct.Cl. 4, 9 (1960).

Plaintiff simply has no legal basis for recovery in this court on the facts properly before us on the motions.

SKELTON, Judge (dissenting):

I cannot agree with the decision of the majority because I believe that an injustice has been done in this case.

The sole question before the court is whether the plaintiff Ruth Christie voluntarily resigned her position with the Navy's Bureau of Aeronautics or whether the agency forced her to resign against her will by coercion, intimidation, and duress so as to make her resignation involuntary. I am firmly convinced that her resignation was coerced.

The plaintiff was a five-point veteran's preference eligible employee under the provisions of the Veterans' Preference Act of June 27, 1944, 58 Stat. 387, *as amended,* 5 U.S.C. §§ 1302, 2108, and 3309. She founded and organized the Bureau and headed it from 1944 to 1968. In 1968 a Mr. F. M. McNeal was made civilian head and in 1971 a Mr. A. J. McGuckin was made plaintiff's immediate supervisor. Neither man had had any prior experience in the work. The facts show that these two men began a course of harassing conduct toward the plaintiff to provoke her and to eventually get rid of her regardless of the means or the cost. From then on her doom was sealed, and it was only a question of time until a situation could be created on which charges could be brought against her. That opportunity came when McGuckin provoked her to anger and she inadvertently touched his shoulder with her fingers. As a result, plaintiff was charged with "attempting to inflict bodily injury on your supervisor." Such a charge was ridiculous on its face. McGuckin was in about as much danger of bodily injury on that occasion as an elephant would be if touched by a gnat or a fly.

The harassing treatment the plaintiff received at the hands of McGuckin and

McNeal was totally unjustified. Fellow employee Robert Clark said her treatment was "grossly unfair, if not illegal." Another employee, Richard Kreider, said the treatment Miss Christie received was "contemptuous," but that she "was very capable, had the respect of her fellow employees, and did nothing to warrant this treatment." He said further "this was a pure and simple case of sex discrimination." (She was the only woman employee, except clerks and secretaries.) Nevertheless, McGuckin and McNeal forced her out regardless of the cost. The time has now come for the cost to be paid.

The plaintiff alleges in this case that the charges arising out of the McGuckin incident were planned, contrived, and ridiculous, and that she had no intention of inflicting any bodily injury on McGuckin; that the charge was held over her head to force her to resign; and was not dismissed until after she resigned; that she was threatened with removal from her job on the charge and was told that if she was so removed she would forfeit all of her retirement benefits that she had earned with 29 years of service (which was of course a misrepresentation and false); that in any event she would be removed in a reduction-in-force program (which was false); and that she could sign a resignation form and still appeal her removal (which was false); and that her resignation was not voluntary but was induced by deceit, duress, intimidation, coercion and time pressure. The defendant filed a motion for summary judgment thereby admitting the foregoing allegations of the plaintiff to be true. Under these circumstances, there is no way that the Government is entitled to a summary judgment.

Faced with the above threats, deceitful and false misrepresentations, pressure, contrived charges, coercion, duress, intimidation, and time pressure, the plaintiff had no choice except to sign the resignation form. She was forced to choose on the one hand between what she believed to be the utter disaster of losing her job in disgrace along with her 29 year earned retirement annuity, and on the other hand a bare living on discontinued service retirement. She had a choice, as the poet says, between "death and exile," a choice between the "guillotine and the hangman's noose," a choice between "Scylla and Charybdis" (in avoiding one monster you fall prey to another. *See* Homer Od. XII. 73, 235, 430 and Gautier de Lille Alexandreis (circa 12).) It is clear that plaintiff had no choice except to sign the resignation form. The "freedom of choice" required by the regulations below was absent. Under these circumstances, plaintiff's resignation was not voluntary. Defendant's regulations so provide. The regulations are as follows:

Federal Personnel Manual Supplement 752–1, Subchapter S1, Adverse Actions by Agencies (February 4, 1972).

2a(1) Separations and reductions in rank or pay voluntarily initiated by an employee are by their very nature actions which do not require the use of adverse action procedures. On the other hand, a normally voluntary action—i. e., *a resignation,* optional retirement, or reduction in rank or pay at the employee's request—*is an adverse action if it is obtained by duress, time pressure, intimidation, or deception.* Whether an action is voluntary or involuntary is determined not by the form of the action but the circumstances that produced it.

(2) The Commission holds that an action requested by an employee *is voluntary only if the employee has freedom of choice.* The general principle is that an action is voluntary if the employee is free to choose, understands the transaction, is given a reasonable time to make his choice, and is permitted to set the effective date.

(3) * * * [*I*]f the agency uses deception, duress, time pressure or intimidation to force him to choose a particular course of action, the action is involuntary.

S1–2b. (4). Employee does not set effective date. *An action is involun-*

tary *if the employee does not set the effective date.* The agency may point out the desirability of another date, but it may not arbitrarily set an earlier or later date and have the action remain a voluntary one. [Emphasis supplied.]

These regulations plainly provide that: * * * [A] resignation * * * is an adverse action if it is obtained by duress, time pressure, intimidation, or deception. * * *

All of these elements are present in the instant case. Yet the majority holds that the resignation was voluntary. This is contrary to the facts.

Furthermore, the regulations provide that the resignation is voluntary:

* * * [O]nly if the employee has freedom of choice. * * *

There was no freedom of choice in this case.

But there is more. The regulations provide:

* * * [I]f the agency uses deception, duress, time pressure or intimidation to force him [her] to choose a particular course of action, the action is involuntary.

In the face of the Government's admission by the filing of its motion for summary judgment in this case that the agency used deception, duress, time pressure and intimidation to force the plaintiff to sign a resignation form, it is difficult to understand how the majority can hold that the resignation of the plaintiff was voluntary. Even without the Government's admission, the facts affirmatively show that her resignation was involuntary.

Under the circumstances pointed out above, the resignation form the plaintiff was forced to sign was an adverse action. Therefore, the agency was required to treat it as such and conduct an investigation and accord the plaintiff a hearing. Neither course was followed. The agency clearly violated its own regulations. This violation was made all the more evident by the fact that when the plaintiff signed the resignation form and delivered it to the agency she notified and advised the agency that she was signing the resignation because of coercion and duress by the agency. This information put the agency on notice of her coercion and duress claim, but it ignored these facts and denied the plaintiff the protection guaranteed to her by the regulations.

It should be pointed out that the agency violated its own regulations in another particular. The regulations quoted above provide that:

* * * An action is involuntary if the employee does not set the effective date. [for retirement] * * * [B]ut it [the agency] may not arbitrarily set an earlier or later date and have the action remain a voluntary one.

In this case this regulation was clearly violated because the agency arbitrarily set three different dates for the resignation of plaintiff to become effective without consulting with the plaintiff as to the dates it selected and without allowing the plaintiff to "set the effective date." This was a direct violation of the regulations by the agency.

We have often held that a violation by an agency of its own regulations voids an action taken by it against an employee. Here we have not one but several of such violations.

The majority cites cases where we have held that resignations by employees were voluntary and that they were not entitled to any relief. However, a close examination of those cases show they are distinguishable on the facts. The Government anticipated such situations when it promulgated the regulations quoted above that provide that each case depends on its own facts, as follows:

* * * Whether an action is voluntary or involuntary is determined not by the form of the action *but the circumstances that produced it.* [Emphasis supplied.]

Consequently the cases cited by the majority are not controlling here. The instant case is more like the facts in *Perlman v. United States,* 490 F.2d 928, 932–

33, 203 Ct.Cl. 397, 406–08 (1974) that the combination of the acts of the Government denied freedom of choice to the plaintiff as to his voluntary retirement.

The majority have undoubtedly been influenced by those resignation cases where we have denied relief, in which I joined, where the employee was guilty of overreaching or was attempting to gain an undue advantage by resigning. This is not such a case. The plaintiff was not guilty of any such overreaching nor was she trying to gain any extra benefits by resigning. On the other hand, she was bitterly opposed to resigning. She was merely trying to keep body and soul together. She was led to believe by the misrepresentations and coercion of the agency that the only way she could do this was by resigning. There was no way that she could profit or benefit by resigning. The overreaching and unconscionable conduct all occurred on the part of the agency. In short, she was forced out against her will. This sort of conduct should not be condoned, much less approved.

In this case the plaintiff requested a hearing on whether or not her retirement was voluntary (see affidavit of Mr. Carstater, her representative before the Commission, attached to her cross-motion for summary judgment and plaintiff's appeal letter of June 27, 1972). The Commission denied the hearing request, even though plaintiff pointed out that she was entitled to due process. This was clear error. See Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) where the Supreme Court held in no uncertain terms that a Government job was property and that because of the due process clause it could not be taken from a Government employee without a hearing "at some stage of the proceeding." The decision of the Commission denying such a hearing in this case clearly violates the due process clause of the Constitution, and the opinion of the majority in approving this denial falls into the same error. See the following additional cases holding that property may not be taken from a citizen without a hearing: Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971) (loss of a state job); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (loss of welfare payments); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (revocation of a parole); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (cancellation of a prisoner's good-time credits); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (cancellation of a driver's license); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (damaged reputation and standing); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (seizure of mortgaged property); and Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (suspension of school children).

It is obvious that the agency violated its own regulations in several respects; that the resignation of plaintiff was obtained by the agency through deceit, intimidation, misrepresentation, time pressure, duress and coercion (within the meaning of Fruhauf Southwest Garment Co. v. United States, 126 Ct.Cl. 51, 111 F.Supp. 945 (1953)); and that the agency denied the plaintiff due process as required by the Constitution in refusing to grant her a hearing as to the voluntariness of her resignation.

Accordingly, I would allow plaintiff's motion for summary judgment and enter judgment for the plaintiff, awarding her back pay plus other appropriate benefits and restoring her to her position, and I would deny defendant's motion for summary judgment. I would remand the case to the trial judge to determine the amount of plaintiff's recovery under Rule 131(c).