**Daryl C. McCLARY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 280–83C.

United States Claims Court.

May 5, 1988.

Jack B. Solerwitz, Mineola, N.Y., for plaintiff.

Terrence S. Hartman, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, Director, M. Susan Burnett, Asst. Director, Washington, D.C., for defendant; Lynn Goldstein, Drug Enforcement Admin., of counsel.

## OPINION

ANDEWELT, Judge.

On remand from the Court of Appeals for the Federal Circuit, the only issue remaining in this action is whether plaintiff, Daryl C. McClary, an employee of the Drug Enforcement Administration (DEA), is entitled to moving expenses in connection with his transfer from DEA's office in Blaine, Washington, to its office in Denver, Colorado. *McClary v. United States*, 775 F.2d 280 (1985), *aff'g in part, rev'g in part*, 7 Cl.Ct. 160 (1984). The action is presently before the Court on defendant's motion for summary judgment. For the reasons set forth herein, defendant's motion is granted and the complaint will be dismissed.

### *Facts*

The facts are undisputed. During 1978, plaintiff learned that his position as a GS-13 DEA Senior Special Agent in Blaine, Washington, had been eliminated and eventually would be filled by a GS-12 (or below)

Special Agent. Plaintiff thereupon began to apply for available GS–13 Special Agent positions in other DEA offices. In December 1978, plaintiff's wife was offered a promotion by her private-industry employer that would necessitate a move to the Englewood, Colorado, area. Plaintiff then requested a transfer to DEA's Denver office as a GS–13 Senior Special Agent. After being assured by DEA officials that his transfer request would be "taken care of," plaintiff agreed with his wife that she should accept the job offer in Colorado, which she did, commencing work there on March 1, 1979. However, DEA did not transfer plaintiff to Denver during the next year, and, further, filled available GS–13 positions in Denver with other Special Agents.

In November 1979, DEA transferred a GS–12 Special Agent into the Blaine office. Soon thereafter, a DEA official suggested that plaintiff might be transferred to the Los Angeles office to solve the "overstaffing" problem in Blaine. Plaintiff was then told that the only way he could be transferred to Denver would be for him to submit a memorandum offering to take a voluntary grade reduction to a GS–12 and to pay his own moving expenses.

Plaintiff made such a request in a January 25, 1980, memorandum in which he stated that, to secure a transfer to Denver, he was "willing to take a GS–12 ... position if necessary" and that the transfer would be at "no cost to DEA" since his wife's employer agreed to pay their moving expenses. In April 1980, plaintiff submitted another memorandum in which he again offered to take a downgrade to a GS–12 and to pay his own moving expenses. Thereafter, plaintiff was transferred to DEA's Denver office as a GS–12 Special Agent, effective June 1, 1980. Once in Denver, plaintiff sought to regain his GS–13 grade. He requested that the Special Counsel of the Merit Systems Protection Board (MSPB) commence an inquiry into the actions of DEA, but the Special Counsel declined to take any action.

On May 3, 1983, plaintiff filed suit in this Court seeking reinstatement to the GS–13

level, back pay, and reimbursement of his moving expenses. The Court (per Judge Seto) dismissed plaintiff's promotion and back pay claims for lack of jurisdiction on the ground that the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified, as amended, in various sections of 5 U.S.C. (1982 & Supp. IV)) provided for initial review of such claims by the MSPB, not the Claims Court, and plaintiff had failed to appeal to the MSPB after the Special Counsel refused to act. *McClary,* 7 Cl.Ct. at 163–64. The Court held that it had jurisdiction to hear claims for moving expenses brought pursuant to 5 U.S.C. § 5724, but that plaintiff had failed to state a claim for such relief because the complaint did not contain an allegation that DEA "authorized or approved" payment of his moving expenses, a prerequisite to payment by the Government of moving expenses under the statute. 7 Cl.Ct. at 164–65.

On appeal, the Federal Circuit affirmed the Claims Court's holding with respect to plaintiff's promotion and back pay claims, noting that the CSRA, at 5 U.S.C. § 7512, specifically provides for review by the MSPB of reductions in grade. *McClary,* 775 F.2d at 282. As to plaintiff's moving expense claim, the Federal Circuit agreed with Judge Seto's holding that the Claims Court generally had jurisdiction to consider such claims, but disagreed with his conclusion that plaintiff had not stated such a claim. In this regard, the Federal Circuit stated:

> The complaint alleges that any consent by McClary was vitiated through force and coercion by the agency. If appellant was in fact coerced, that may be the legal equivalent of authorization or approval by the agency of appellant's moving expenses. Perhaps, as the government contends, the proofs would fail to establish the degree of coercion and duress required to be legally sufficient under *Christie v. United States,* 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975). Yet that is a matter for the trial court and not this court to address in the first instance.

775 F.2d at 283.

On remand, defendant filed the instant motion for summary judgment, in which it

contends that plaintiff's request for a transfer at a GS–12 was voluntary. In response, plaintiff filed an affidavit that sets forth the factual predicate for his claim that his transfer request was in fact coerced. The facts set forth in the affidavit are not disputed by defendant.

In his affidavit, plaintiff states that, commencing in December 1978, which was prior to the time his wife accepted the job in Colorado, through October 1979, DEA officials repeatedly represented that plaintiff's request for a transfer to the Denver office at a GS–13 would be granted. Plaintiff further states that, in reliance upon those representations, his wife accepted the job in Colorado and he refrained from making any plans inconsistent with his transfer to the Denver office. Plaintiff summarizes his contention that his request to transfer to Denver at a GS–12 was coerced as follows:

15. ... I believe that DEA officials involved were aware that I had made extensive arrangements to move to Denver and that I placed complete reliance in their representations. I believe that these agents seized upon the circumstances that had been created as a direct result of my reliance on their representations to coerce me into accepting a GS–12 position in Denver rather than the GS–13 I had been promised. Moreover these officials also leveraged the fact that a replacement had already arrived in Blaine against me to induce me to sign the memorandum.

16. In sum, my transfer to Denver and my downgrade to a GS–12 and without compensation for living expenses were not voluntary. I was coerced into signing the memorandum by situational pressure that was exerted on me and that had been created as a direct result on my reliance on agency misrepresentation. On the basis of those representations I had made a major investment and commitment to move into Denver. When DEA officials repudiated their representations, I was forced to accept new terms which were dictated to me. Having gained my trust and reliance, DEA officials seized upon the unequal bargaining power that had been created.

### Discussion

5 U.S.C. § 5724(a)(1) sets forth the general rule that an agency shall pay an employee's moving expenses when the employee's transfer is in the Government's interest and the agency approves or authorizes the payment.[1] 5 U.S.C. § 5724(h), however, limits this general rule by prohibiting payment of moving expenses "[w]hen the transfer is primarily for the convenience or benefit of an employee ... or at his request." [2]

■■■ Defendant contends that summary judgment is appropriate here because plaintiff made written requests for the transfer to Denver at a GS–12, and, hence, Section 5724(h) prohibits payment of his moving expenses. In response, plaintiff acknowledges that he made such requests, but contends that he made them under duress as a result of coercion by DEA.[3] As the Federal Circuit has suggested, if plaintiff can establish that these requests were made under duress brought on by

---

1. 5 U.S.C. § 5724(a)(1), in pertinent part, provides:

   (a) Under such regulations as the President may prescribe and when the head of the agency concerned or his designee authorizes or approves, the agency shall pay from Government funds—

   (1) the travel expenses of an employee transferred in the interest of the Government from one official station or agency to another for permanent duty, and the transportation expenses of his immediate family, or a commutation thereof under section 5704 of this title.

2. 5 U.S.C. § 5724(h) provides:

When a transfer is made primarily for the convenience or benefit of an employee, including an employee in the Foreign Service of the United States, or at his request, his expenses of travel and transportation and expenses of transporting, packing, crating, temporarily storing, draying, and unpacking of household goods and personal effects may not be allowed or paid from Government funds.

3. To the extent that plaintiff also is suggesting that he is entitled to moving expenses under a promissory estoppel theory, this Court lacks jurisdiction to entertain such a claim. *Schuhl v. United States*, 3 Cl.Ct. 207 (1983); *Biagioli v. United States*, 2 Cl.Ct. 304, 307–08 (1983).

Government action, their voluntariness would be vitiated and DEA may be deemed to have "authorized or approved" payment of plaintiff's moving expenses within the meaning of Section 5724(a)(1). *See McClary*, 775 F.2d at 283.

■ Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The Court must "view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in [his] favor." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed.Cir.1985). Where the moving party has presented a properly supported motion based upon the lack of proof by the nonmovant of a material fact, to survive the motion, the nonmovant must present sufficient evidence for the trier of fact to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

■ The standard employed in this Court for evaluating contentions that a federal employee's actions were the product of duress brought on by Government action is the tripart test summarized in *Christie*. Under that test, the party alleging coercion must prove:

> (1) that [it] involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.

207 Ct.Cl. at 338, 518 F.2d at 587 (quoting *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 62, 111 F.Supp. 945, 951 (1953)).[4] *See also Leone v. United States*, 204 Ct.Ct. 334, 339 (1974). As plaintiff explained in his affidavit, he clearly was under "situational pressure" to relocate to Denver. In reliance upon representations made by DEA officials that his request for a transfer to Denver at a GS–13 would be approved, plaintiff's wife accepted a job in Colorado and plaintiff obviously had a strong desire to join her there. But plaintiff's decision to alleviate that "situational pressure" by requesting a transfer to Denver at a GS–12 simply cannot be deemed to be the product of duress brought on by Government coercion under the standard articulated in *Christie*.

First, plaintiff cannot be deemed to have "involuntarily accepted the terms of [DEA]." There is no suggestion that DEA had a special need for plaintiff in Denver or that it in any other way preferred that he be transferred to Denver rather than any other DEA office. The idea that plaintiff be transferred to Denver did not originate with DEA but, rather, with plaintiff, after he learned of a promotion opportunity available to his wife in that area. After plaintiff's wife transferred to Denver, albeit as a result of the representations made by DEA officials, plaintiff continually sought a transfer to Denver. DEA officials ultimately indicated that the only way plaintiff would be transferred to Denver would be if he requested a downgrade to a GS–12 and paid his own moving expenses. But these were merely conditions for permitting plaintiff to secure a transfer that he requested and wanted, not an attempt to force plaintiff involuntarily to accept a transfer to Denver under DEA's terms.[5]

---

**4.** *Christie* also indicates that an action of a federal employee will be deemed involuntary if it is the result of deception by the Government. 207 Ct.Cl. at 339, 518 F.2d at 588. However, the actions of Government officials are presumed to be taken in good faith, *see Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198–99, 543 F.2d 1298, 1301 (1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977); *Librach v. United States*, 147 Ct.Cl. 605, 612 (1959), and plaintiff

has not presented any evidence to suggest that the DEA officials involved here did not believe their representations to be true or that these officials in any way intended to deceive him.

**5.** Plaintiff does not contend that he was in any way misinformed as to the ramifications of accepting these conditions. *Compare Gaudette v. Dep't of Transp.*, 832 F.2d 1256, 1258–59 (Fed. Cir.1987).

Second, the circumstances clearly permitted plaintiff other alternatives. The court in *Christie* stressed that, when determining whether such alternatives exist, an objective standard is employed:

> Duress is not measured by the employee's subjective evaluation of a situation. Rather, the test is an objective one. *McGucken v. United States*, 187 Ct.Cl. 284, 289, 407 F.2d 1349, 1351, *cert. denied*, 396 U.S. 894 [90 St.Ct. 190, 24 L.Ed.2d 170] (1969); *Pitt v. United States*, 190 Ct.Cl. 506, 513, 420 F.2d 1028, 1032 (1970). While it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports [the] finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff *had a choice*. She could stand pat and fight. She chose not to. Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation.

*Christie*, 207 Ct.Cl. at 338, 518 F.2d at 587–88. Here, it is not clear from plaintiff's briefs whether he contends, in effect, that DEA was obligated under the CSRA or some other authority to transfer him to Denver at a GS–13. But if DEA was so obligated, then plaintiff had the alternative, as in *Christie*, "to stand pat and fight" for his rights in the appropriate legal forum. On the other hand, if plaintiff had no legal entitlement to a GS–13 position in Denver, then he still had alternatives. For example, he could have stayed in the Blaine office and waited to see what, if anything, DEA would formally propose; he could have requested a transfer to Los Angeles or to some other DEA office that had current openings at a GS–13; or he could have waited for a new GS–13 opening in Denver. Here, plaintiff requested a transfer to Denver at a lower grade because at the time, and for his own personal reasons, he preferred that option to the others then available to him. While these alternatives, as in *Christie*, may have been "inherently unpleasant," they nevertheless existed.

The representations by DEA officials that plaintiff would be transferred to a GS–13 position in Denver were ill-advised in that they created expectations in plaintiff that DEA ultimately did not meet. But the burden of establishing that plaintiff's subsequent request for a transfer to Denver at a lower grade was made under the degree of duress required to be legally sufficient under *Christie* is a "heavy one." *Leone*, 204 Ct.Cl. at 339. Here, even when the events are viewed in the light most favorable to him, plaintiff has not met that burden.

### Conclusion

There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is granted and the Clerk of the Court shall dismiss the complaint. No costs.

IT IS SO ORDERED.