Charles W. HALL, Petitioner,

v.

**DEPARTMENT OF THE AIR
FORCE, Respondent.**

No. 00–3444.

United States Court of Appeals,
Federal Circuit.

DECIDED: March 7, 2001.

Before CLEVENGER, Circuit Judge,
PLAGER, Senior Circuit Judge,
GAJARSA, Circuit Judge.

PER CURIAM.

Charles W. Hall seeks review of the final decision of the Merit Systems Protection Board ("Board") dismissing his appeal. *Hall v. Dep't of the Air Force,* 86 M.S.P.R. 689, No. SF0752000048–I–1 (MSPB Aug. 18, 2000). We *affirm.*

I

Mr. Hall began his service with the Air Force in August 1997 as a Personnel Assistant at McClellan Air Force Base, Cali-

fornia. After a relocation to Kadena Air Force Base in Japan, Mr. Hall was eventually employed as a Guidance Counselor in the Education Office in February 1999. On May 18, 1999, Mr. Hall's mother-in-law and his two children, all of whom lived with the petitioner, were referred to the agency's Family Advocacy Program ("FAP") based upon a neighbor's complaint of possible mistreatment by the petitioner. The mother-in-law reported that the petitioner prohibited her from having friends or outside contact, abused her physically and sexually, and severely restricted the amount of food to be eaten by herself and his children. Mr. Hall was interviewed that same day and denied the allegations made by his mother-in-law. Two days later, Mr. Hall filed a "Request for Early Departure of Dependents" so that his mother-in-law and two children could return to Cebu City, Philippines, Mr. Hall's permanent residence.

In a follow-up meeting with Capt. Anthony Hassan of the FAP on May 25, 1999, Mr. Hall revealed that he had a girlfriend in the Philippines with whom he regarded himself to be having a "secret marriage." On May 26, 1999, the Family Maltreatment Case Management Team ("FMCMT") considered the evidence against Mr. Hall, and concluded that the maltreatment allegations were substantiated. The following day, the petitioner sent an e-mail to Capt. Anthony Hassan of the FAP stating, "I will resign, and return to retirement in paradise soon." On May 28, 1999, Mr. Hall sent an e-mail to his supervisor, Ava Gilmore, stating, "Due to my deteriorating medical condition, I am requesting early return from overseas area, and the exercise of my return rights to March AFB . . . ." In an e-mail dated June 4, 1999, petitioner informed Capt. Hassan that his "early departure" and "resignation" had been approved by command. Several days later, petitioner re-submitted

a separation request for "early release" to return to his "permanent home of record, Cebu City, Philippines for long-term medical treatment." Mr. Hall stated in his request, "My specific difficulties seem to involve the following: stress and fatigue caused by active & on-going medical/physical problems; continuos [sic] treatment with medication regiments; the exurbanite [sic] costs of on-island/military treatment and lack of specific drugs (exceeding insurance); prolonged sick leave/work absence; absence & support of my family members and financial/family problems with my ex-spouse." On June 9, 1999, Mr. Hall sent another e-mail to Capt. Hassan, stating, "I am sorry to disappoint you and the team, since 'you all' were not responsible for my departure, but the decision to leave the island and the AF was made in January (thru no help from 'you all') by me, based on the fact—that I can not live here on a mire [sic] $100.00 a week (as is the case)." On June 28, 1999, Mr. Hall submitted a resignation form, noting that "[m]y specific reason for resignation are [sic] due to stress and fatigue caused by active & on-going medical/physical problems caused by treatment/medication, medical expenses and lack of specific Rx drugs; and the need for two specific medical/surgical operations." In a letter of complaint, dated July 13, 1999, Mr. Hall stated that "[g]iven my medical history to date and the even worse prognosis of my health by USNH, and the fact that I would not get LWOP from Okinawa, I decide the best course was resignation." On July 27, 1999, the agency informed Mr. Hall that his resignation was approved, effective July 28, 1999.

Mr. Hall later filed an appeal with the Board indicating that he was appealing a "constructive discharge" as a result of the agency's alleged "violation of constitutional rights of self and family" through the FAP, "covert and overt threats" by Capt.

Hassan, and verbal reprimands by Ms. Gilmore.

Retirements from federal service are presumed to be voluntary and beyond the jurisdictional reach of the Board. *See Mintzmyer v. Dep't of the Interior,* 84 F.3d 419, 423 (Fed.Cir.1996); *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975). That presumption may be rebutted, however, if the petitioner can establish that his retirement was caused by duress or coercion applied by the agency, or by misrepresentation or deception. *See Covington v. Dep't of Health & Human Servs.,* 750 F.2d 937, 941–42 (Fed.Cir. 1984). If the presumption of voluntariness is rebutted, then the retirement action is considered involuntary and equivalent to removal, an adverse action over which the Board has jurisdiction, and which, if proven, can be rectified by the Board. Mr. Hall sought to rebut the presumption that his retirement was voluntary.

## II

The Administrative Judge considered the evidence of record, and determined that Mr. Hall made his decision to leave Kadena Air Force Base prior to his involvement with the FAP. Moreover, the Administrative Judge found that the evidence suggested that Mr. Hall resigned because of his medical problems and other personal reasons (*e.g.,* his girlfriend in the Philippines and financial reasons), and not because of agency harassment, coercion, or misinformation.

## III

We must affirm the Board's decision unless we determine that it is arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law. We also must accept fact-findings by the Board that are supported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994).

We have reviewed the arguments presented by Mr. Hall and the record before the Board. Substantial evidence supports the Board's finding that Mr. Hall's retirement was not the product of agency coercion or duress, but was a voluntary decision based on his health and the fact that agency regulations did not permit him to receive travel and transportation expenses if he went on leave without pay from Kadena Air Force Base. Therefore, we affirm the final decision of the Board.