[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-11076
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 28, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00718-CV-FTM-29-SPC

JESSICA RADEMAKERS,
a.k.a. Jessica Schipansky,

Plaintiff-Appellant,

versus

MICHAEL SCOTT,
in his official capacity as Sheriff of Lee County,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 28, 2009)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Jessica Rademakers appeals the summary judgment in favor of her former

employer, Michael Scott, and against her complaints of retaliation and sexual harassment under the Florida Civil Rights Act, Fla. Stat. § 760.01, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), -3(a), and a denial of procedural due process, id. § 1983; U.S. Const. amend. XIV. The district court ruled that Rademakers relinquished her right to due process when she resigned voluntarily and she failed to establish a prima facie case of retaliation or sexual harassment. We affirm.

## I. BACKGROUND

Rademakers was hired as a patrol officer by the Sheriff's Office of Lee County, Florida, and later promoted to the position of detective. In May 2006, Rademakers attended a retirement party for Captain Dennis Brooks at a restaurant in Fort Myers, Florida. After the party, Lieutenant Brad Gossman complained that Rademakers had rubbed her breasts against Captain Jeff Hollan and had engaged in other "inappropriate physical contact" with Hollan and a third coworker, Lieutenant Kim Falk. Gossman's supervisor notified Chief Deputy Charles Ferrante of the complaint and, on June 15, 2006, Ferrante approved an investigation into possible misconduct by Rademakers, Hollan, and Falk. On June 28, 2006, Rademakers received formal notice of the investigation.

On August 9, 2006, Lieutenant Robert Sherry issued a report that stated he

2

had considered statements of both guests and employees of the restaurant and concluded that Rademakers had committed both conduct unbecoming an officer and insubordination by being untruthful during the investigation. The report contained synopses of statements by fifteen witnesses that Rademakers, Hollan, and Falk had "rubbed up against each other, touched each other on the legs, performed 'lap dances' for each other" and committed acts "with over sexual overtones." The report also contained synopses of statements by eighteen witnesses, who were questioned at the requests of Rademakers, Hollan, and Falk and did not observe any inappropriate behavior at the party. The report stated that Rademakers and Hollan had failed their polygraph examinations, while complainant Gossman and two witnesses adverse to Rademakers had passed their polygraph examinations. After Rademakers received notice of the report and of the likelihood that she would be terminated, she resigned.

In November 2007, Rademakers filed a complaint against Scott in his official capacity as Sheriff of Lee County. Rademakers complained that she had been sexually harassed by Ferrante and retaliated against for reporting that harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), -3(a), and state law, Fla. Stat. § 760.01. Rademakers alleged that the investigation had been conducted in bad faith and she had been forced to undergo a

3

polygraph examination in which the examiner "intimidate[d], harass[ed], and embarass[ed]" her. Rademakers complained that Scott had deprived her of liberty and property interests in her reputation and continued employment in law enforcement without due process. 42 U.S.C. § 1983; U.S. Const. amend. XIV. Rademakers alleged that she had been constructively discharged when Scott forced Rademakers to choose whether to resign or face termination for her misconduct without a pre-termination hearing.

Scott moved for summary judgment. Scott argued that Rademakers could not prove that she had been denied due process because she had resigned voluntarily, and Scott argued that Rademakers's resignation was not a constructive discharge. Scott also argued that Rademakers had failed to prove a prima facie case of harassment because she had failed to establish a relationship between the alleged harassment and the investigation and had failed to prove a tangible job detriment. Scott did not address Rademakers's claim of retaliation. Scott attached to his motion excerpts of Rademakers's deposition and affidavits executed by Ferrante and Scott.

In her deposition, Rademakers said she was harassed by Ferrante during the retirement party when he recounted his sexual exploits, propositioned Rademakers to have sex, and later touched Rademakers inappropriately in the presence of

4

coworker Falk. Rademakers stated that, even though she had reported the sexual harassment to Hollan, she decided not to mention the harassment during the investigation. Rademakers acknowledged that throughout the investigation she performed her usual duties without a change in pay or benefits.

Rademakers stated that, after she "heard rumors" she was going to be fired, she contacted her attorney and a union official, Cecil Pendergrass. According to Rademakers, Scott told Pendergrass that Rademakers's termination "was a done deal," and that Rademakers could resign that day or be fired the next morning. Based on her choices, Rademakers decided to resign.

Affiants Ferrante and Scott denied any wrongdoing. Ferrante stated that he had approved, but had not participated in, the investigation, and he denied that he engaged in any inappropriate sexual conduct with Rademakers. Scott verified that Ferrante had approved the investigation and had not made any recommendations about terminating Rademakers. Scott stated that he reviewed the investigation report and told Pendergrass that no final decision had been reached, but his usual punishment would be to terminate an employee who had not been truthful. Scott stated that he had not decided whether to terminate Rademakers before he learned that she had resigned.

Rademakers argued that she had been constructively terminated. She

supported her argument with an affidavit by Pendergrass that Scott said Rademakers would be terminated unless she resigned. Rademakers challenged the validity of her polygraph examination and supported her argument with a deposition in which the polygraph examiner opined that a polygraph examination is useless without a confession or admission. Rademakers argued that her affidavit and those submitted by Hollan and Falk supported her complaint of harassment.

Scott amended his motion for summary judgment and addressed Rademakers's claim of retaliation. Scott argued that Rademakers failed to prove that she had engaged in a protected activity and, because she had resigned voluntarily, she had not been constructively discharged or suffered an adverse employment action. Scott also argued that the investigation was approved for the legitimate nonretaliatory reason to investigate possible misconduct by Rademakers, Hollan, and Falk. Scott supported his arguments with the affidavit of Hollan stating that Rademakers had complained about Ferrante's harassment, but Hollan did not report it to his superiors or mention the complaint during the investigation because Rademakers never made a formal complaint.

The district court granted summary judgment in favor of Scott. The district court ruled that Rademakers had resigned voluntarily and had not been constructively discharged and, for that reason, could not establish that she had been

6

denied due process. The district court rejected Rademakers's complaint of retaliation on the ground that she failed to prove that she had suffered an adverse employment action or there had been a relationship between any adverse action and a protected activity. The district court ruled that Rademakers could not establish a prima facie case of sexual harassment because she failed to prove she had suffered a tangible job detriment.

## II. STANDARD OF REVIEW

We review a summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Hargray v. City of Hallandale, 57 F.3d 1560, 1567 (11th Cir. 1995).

## III. DISCUSSION

Rademakers challenges the summary judgment in favor of Scott on three grounds. First, Rademakers argues that her resignation was a constructive discharge and that discharge, coupled with evidence that the investigation was commenced and conducted in bad faith, established that Scott violated her liberty and property interests without due process. Second, Rademakers argues that the combination of the investigation, her polygraph examination, her constructive discharge, and publication of the results of the investigation constituted a materially adverse action. Third, Rademakers argues that the investigation and her

constructive discharge established that she suffered a tangible employment action. We address each argument in turn.

*A. Scott Was Entitled To Summary Judgment Against Rademakers's Complaint That She Was Deprived of Liberty and Property Interests Without Due Process.*

Section 1 of the Fourteenth Amendment "restrains the states[] from depriving any person of life, liberty, or property without due process of law." Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1042–43 (11th Cir. 1989). Damage to a personal reputation, "standing alone, does not provide a basis for an action under 42 U.S.C. § 1983, [but] when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000). If circumstances establish that an employee was not terminated and instead resigned voluntarily, due process is not implicated. See Hargray, 57 F.3d at 1568.

A resignation is presumed voluntary unless an employee "comes forward with sufficient evidence to establish that the resignation was involuntarily extracted.'" Id. (quoting Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975)). A resignation may be deemed involuntary if it is submitted under circumstances amounting to coercion or duress, such that the employee was "deprived . . . of free will in choosing to resign." Id. That determination rests on

8

"'an objective standard rather than by the employee's purely subjective evaluation[.]'" Id. (quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 174 (4th Cir. 1988)). Coercion does not exist when the employee faces what she considers to be limited and disagreeable choices regarding her employment:

> [T]hat the employee may perceive his only option to be resignation — for example, because of concerns about his reputation — is irrelevant. Similarly, the mere fact that the choice is between comparably unpleasant alternatives — e.g., resignation or facing disciplinary charges — does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary.

Stone, 855 F.2d at 174.

A resignation in response to imminent termination may be considered voluntary if the totality of the circumstances suggest the decision to resign was a deliberate one. Factors that are "helpful" to determine whether the resignation was voluntary or obtained by coercion include whether the employee understood the consequences of her decision; the time allotted to decide whether to resign; whether the employee had a choice about the effective date of the resignation; and whether the decision was made with the advice of counsel. Hargray, 57 F.3d at 1568. Even when the only alternative to resignation is termination, the resignation is considered voluntary unless "the employer actually lacked good cause to believe that grounds for the termination . . . existed." Id.

The record establishes that Scott did not coerce Rademakers to resign.

9

Rademakers knew of the investigation months before she decided to resign and of the specific allegations of misconduct. Rademakers chose to resign to avoid a blemish on her employment record, and that choice was made with the assistance of counsel and a union representative. Rademakers argues that Scott lacked good cause to believe there were grounds for termination, but the investigation report documented statements of fifteen witnesses who observed Rademakers engage in sexually inappropriate behavior. Rademakers also argues that the investigation was undertaken in bad faith, but the investigators collected both inculpatory and exculpatory evidence and found the incriminating evidence more persuasive. Because Rademakers "'resigned of [her] own free will even though prompted to do so by events set in motion by [her] employer, [she] relinquished [her] [liberty] interest voluntarily and thus cannot establish that [Scott] "deprived" [her] of it within the meaning of the due process clause.'" Hargray, 57 F.3d at 1567 (quoting Stone, 855 F.2d at 173).

*B. Scott Was Entitled To Summary Judgment Against Rademakers's Complaint of Retaliation.*

Rademakers argues that she was subjected to the investigation, a coercive polygraph examination, and a constructive discharge because she rebuffed Ferrante's sexual advances, but we disagree. To establish a prima facie case of retaliation under Title VII or state law, Rademakers had to prove that she was

10

engaged in a statutorily protected activity, she suffered a materially adverse action, and there was a causal relation between the two events. Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). We agree with the district court that Rademakers failed to satisfy two of these three elements.

Rademakers failed to establish that she suffered a materially adverse action. For an action of an employer to be considered "materially adverse" and intended as retaliation, the employee must prove that the action would "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., v. White, 548 U.S. 63, 68, 126 S. Ct. 2405, 2415 (2006). Neither the investigation itself nor the recommendation of termination were materially adverse actions, and Rademakers resigned voluntarily.

Rademakers also failed to establish a relationship between her complaint of sexual harassment to Hollan and the allegedly adverse employment actions. To establish the required causal connection, Rademakers had to prove "that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008) (internal quotation marks and brackets omitted). Rademakers failed to establish that either Scott, Ferrante, or other

11

officers involved in the investigation knew that she had complained about Ferrante's harassment.  See Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997).  Hollan stated that he never reported Rademakers's complaint because she did not make a "formal complaint."

*C. Scott Was Also Entitled To Summary Judgment Against Rademakers's Complaint of Sexual Harassment.*

Rademakers argues that she presented evidence of a tangible employment action to support her complaint of sexual harassment, but this argument fails.  A tangible employment action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Cotton v. Cracker Barrell Old Country Store, 434 F.3d 1227, 1231 (11th Cir. 2006).  Although the investigation led to a recommendation to terminate Rademakers, the investigation itself was not a tangible employment action.  Rademakers also resigned voluntarily.  The alleged harassment by Ferrante also was not severe enough to alter Rademaker's working conditions.  The district court correctly concluded that Rademakers did not suffer a tangible employment action.

## IV. CONCLUSION

The summary judgment in favor of Scott is **AFFIRMED**.