**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROBERT AUGUSTUS BROOKS,
　　　　　Appellant,

　　　　v.

DEPARTMENT OF THE NAVY,
　　　　　Agency.

DOCKET NUMBER
SF-1221-17-0131-B-1

DATE:  April 24, 2026

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Robert Augustus Brooks, Green Cove Springs, Florida, pro se.

Christina Fuentes, Washington Navy Yard, D.C., for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**FINAL ORDER**

The appellant has filed a petition for review of the remand initial decision, which denied his request for corrective action under the Whistleblower Protection Act.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was a GS-12 Director of Diving Operations for the agency. *Brooks v. Department of the Navy*, MSPB Docket No. SF-1221-17-0131-W-1, Initial Appeal File (IAF), Tab 6 at 86. On December 5, 2016, the appellant filed an individual right of action (IRA) appeal, alleging that the agency took several personnel actions against him in retaliation for various protected activities. IAF, Tab 1 at 2, 7-8, 15. The administrative judge dismissed the appeal for lack of jurisdiction, finding that the appellant failed to make a nonfrivolous allegation that his activities were a contributing factor in a personnel action. IAF, Tab 62, Initial Decision. The appellant filed a petition for review, and the Board issued an order granting the petition, vacating the initial decision, and remanding for an adjudication of the merits on a narrower set of issues. *Brooks v. Department of the Navy*, MSPB Docket No. SF-1221-17-0131-W-1, Remand Order (May 8, 2024). The Board found that the appellant established jurisdiction over his claim that the agency coerced his resignation in retaliation for filing an Inspector General complaint. *Id.* at 10-11.

After further development of the record, including a hearing, the administrative judge issued a remand initial decision denying the appellant's

request for corrective action on the merits. *Brooks v. Department of the Navy*, MSPB Docket No. SF-1221-17-0131-B-1, Remand File (RF), Tab 33, Remand Initial Decision (RID). The administrative judge found that the appellant did not prove that his resignation amounted to a "personnel action" within the meaning of 5 U.S.C. § 2302(a)(2)(A) because he failed to show that his resignation was involuntary based on a theory of coercion. RID at 28-48.

The appellant has filed a petition for review contesting the administrative judge's interpretation of the evidence. *Brooks v. Department of the Navy*, MSPB Docket No. SF-1221-17-0131-B-1, Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 3-4.

## ANALYSIS

As stated above, the central issue at this stage of the appeal is whether the appellant's resignation amounted to a constructive removal. *See Koury v. Department of Defense*, 84 M.S.P.R. 219, ¶ 10 (1999) ("[T]he appellant has the burden of proving by a preponderance of the evidence that his resignation was involuntary in order to establish that the Board has IRA jurisdiction over the resignation as a 'personnel action' as that term is defined at 5 U.S.C. § 2302(a)(2)(A)."). To prove that a resignation constituted a constructive removal, an appellant must demonstrate both that he lacked a meaningful choice when resigning and that the agency's wrongful acts deprived him of that choice. *Rosario-Fabregas v. Merit Systems Protection Board*, 833 F.3d 1342, 1346-47 (Fed. Cir. 2016); *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013). There are numerous theories of constructive removal that apply variously to different fact patterns. *See Bean*, 120 M.S.P.R. 397, ¶ 8. In this case, we agree with the administrative judge that the appellant's claim is most appropriately analyzed under a theory of coercion based on intolerable working conditions. RID at 28-48.

To prove that his resignation was involuntary based on intolerable working conditions, an appellant must show that the agency engaged in a course of action that made his working conditions so difficult or unpleasant that a reasonable person in his position would have felt compelled to resign. *Shoaf v. Department of Agriculture*, 260 F.3d 1336, 1341, (Fed. Cir. 2001); *Markon v. Department of State*, 71 M.S.P.R. 574, 577 (1996). Duress is not measured by the appellant's subjective evaluation of the situation. Rather, the test is an objective one. *Christie v. United States*, 518 F.2d 584, 587 (Ct. Cl. 1975). Merely because an appellant was faced with an inherently unpleasant situation in that his choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of his resignation. *Id.*

In this case, the appellant's service as Director of Diving Operations was not particularly long. The agency appointed him to the position on April 8, 2013, and on February 21, 2015, he resigned. IAF, Tab 6 at 86, 89-91. The administrative judge found, and we agree, that the events most relevant to this appeal began in December 2013, both because they happened closer in time to the appellant's resignation, *see Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 10 (2000), and because that is when the relevant agency officials first became aware of his protected activity, RID at 47.

Briefly and by way of background, the Director of Diving Operations position was housed in the Ship Repair Unit, Maintenance and Engineering Department, under the Commander, Logistics Group Western Pacific, in Singapore. IAF, Tab 23 at 23; RF, Tab 31-1, Hearing Audio (HA) at 5:45 (testimony of the Deputy Maintenance Officer). The appellant's first-level supervisor was the Deputy Maintenance Officer, and his second-level supervisor was the Maintenance Officer, who headed up the Maintenance Department. IAF, Tab 23 at 48; RF, Tab 31-1, HA at 30:20 (testimony of the Deputy Maintenance Officer). The appellant was part of a three-member "dive team," which consisted

of the appellant, the Diving and Salvage Officer, and a Master Diver. RF, Tab 31-1, HA at 37:40 (testimony of the Deputy Maintenance Officer).

There was contention over who had supervisory authority within the dive team. Although the full performance level of the appellant's position was GS-13, he was hired as a GS-12. IAF, Tab 6 at 61, 85. The position description at the GS-13 level stated that the incumbent was to "serve[] as the Supervisor for Diving and Salvage operations," and was to provide direct supervision and exercise supervisory authority for a diving crew. *Id.* at 62-64. The GS-12 position description stated that the incumbent would "typically be assigned the full range of major duties described in the target [position description]" but would be given more direction and guidance by his own supervisor. *Id.* at 60-61.

On October 18, 2013, the appellant had a contentious meeting with two Master Divers—the first of whom had been part of the dive team since the appellant started and the other of whom was in the process of replacing the first. RF, Tab 30-1, HA at 44:25 (testimony of the appellant). The meeting involved a question of whether the appellant had supervisory authority over the Master Divers, as well as concerns over the appellant's job performance and his qualifications for the position. RF, Tab 17 at 144, Tab 30-1, HA at 44:45 (testimony of the appellant). During this meeting, the appellant learned that one or both of the Master Divers had seen his résumé. RF, Tab 17 at 144, Tab 30-1, HA at 45:35 (testimony of the appellant).

The appellant contacted the Inspector General, complaining that his personally identifiable information had not been protected because an agency official leaked his résumé with the intent to discredit him. RF, Tab 17 at 143-45. The Inspector General referred the appellant's complaint to the Commander of Logistics Group Western Pacific for further action. *Id.* at 161-62. After collecting statements from the appellant, the other members of the dive team, and the Maintenance and Deputy Maintenance Officers, the investigating officer prepared a report dated December 26, 2013. *Id.* at 156-60. He found that

disclosure of the appellant's résumé in this context did not violate any law, rule, or regulation. *Id.* at 158, 160. Nevertheless, he made several findings and recommendations related to the interpersonal and organizational issues underlying the dispute. *Id.* at 156-57. In particular, he found that a lack of clarity about the appellant's role on the dive team was causing problems for both the appellant and his teammates. He recommended that, if the command was trying to develop the appellant into a supervisor, then it should create a phased, performance-based plan to that end, and it should clarify for both the appellant and the rest of the staff what the appellant's roles and relations would be. *Id.* at 158-60.

On January 2, 2014, the Maintenance Officer wrote an email to the dive team, stating in relevant part as follows: "As of 6 January, 2014, I will be the direct supervisor for each of you. It seems as though we have had some problems in the past and so I have been directed to have each of you work directly for me vice ANY other arrangement. . . . As such, when it comes to diving, salvage, and underwater ship's husbandry, each of you will receive your marching orders from me." RF, Tab 18 at 8. The Maintenance Officer included in the email a list of tasks for each member of the dive team. *Id.* at 8-9.

The appellant remained employed with the agency for another year after this, and during that time, he was continually disappointed with how the agency was treating him. The salient events of the year included a midyear performance evaluation, a negative recommendation by a Promotion Advisory Board, the appellant's registration with and withdrawal from a Priority Placement Program, health issues, a period of extended leave, and immediately before his February 4, 2015 resignation, the denial of a request for indefinite administrative leave. IAF, Tab 6 at 89-90; RF, Tab 19 at 8. These events are all relevant to the issue of voluntariness, and they are fully explained in the remand initial decision. RID at 14-22. However, we will not detail them again here because they are all more or less subordinate to the principal issue of whether the appellant should have

been vested with supervisory authority. As the administrative judge put it, "The central grievance through the course of the appellant's time with the agency is that the appellant believed that he should be a supervisor and have supervisory authority, but that the command did not actually give him those duties and instead had him work as a colleague with [the rest of the dive team]." RID at 33. In any event, as stated above, the administrative judge found that the evidence as a whole did not support a conclusion that a reasonable person in the appellant's position would have felt compelled to resign. RID at 30-48.

On petition for review, the appellant makes some arguments about the Commander's December 26, 2013 report of investigation. PFR File, Tab 1 at 4, 7; RF, Tab 17 at 156-60. He argues that the investigating officer glossed over his concerns about the release of his résumé, and for no good reason, proceeded to denigrate his work performance. PFR File, Tab 1 at 4, 7-8. He argues that the conduct of the investigation was biased and that the outcome was predetermined in the agency's favor. *Id.* at 7-9. We do not share the appellant's interpretation of either the investigation or the report.

Although the appellant believes that the agency breached its obligations to protect his personally-identifiable information, he has not identified any particular rule that the agency violated, and he has not explained how the investigator's analysis was incorrect. Furthermore, although the appellant thought that his performance demonstrated readiness for a supervisory GS-13 role, neither his supervisors nor his coworkers agreed. RF, Tab 17 at 169-70, Tab 30-2, HA at 25:30 (testimony of the Master Diver), Tab 25:45 (testimony of the Diving and Salvage Officer). In any event, the investigating officer addressed the appellant's work performance only in the context of his role on the dive team, which the appellant himself identified as an area of concern for the investigator. RF, Tab 7 at 157, 165. Mindful that the investigating officer was not in a position to evaluate the appellant's performance, we read his report as a constructive and fairly neutral attempt to help the dive team regain its

cohesiveness and give the appellant an avenue to pursue his professional goals.[2] RF, Tab 17 at 156-60. The appellant argues that the GS-12 position description stated that he would have all of the same duties as a GS-13, including supervisory duties. PFR File, Tab 1 at 4, 8. However, that is not how his supervisors saw it. RF, Tab 17 at 153-54, 169-70. The GS-12 position description states that the incumbent will "typically" be assigned the same duties as a GS-13, which the Maintenance Officer obviously interpreted as meaning that he could exclude certain duties, including supervisory duties. It was this lack of clarity that the report of investigation identified as the root cause of the problems. RF, Tab 17 at 159-60.

Nevertheless, the appellant would not accept the Maintenance Officer's solution, which was to clarify that the dive team were coequal colleagues and all three of them should answer to the Maintenance Officer as their supervisor. IAF, Tab 18 at 8. On review, the appellant argues that the Maintenance Officer retaliated against him for filing the Inspector General complaint by relieving him of his supervisory responsibilities. PFR File, Tab 1 at 4. However, as the administrative judge correctly found, the appellant never had any supervisory responsibilities to begin with.[3] RID at 35.

The appellant argues that he was qualified to be appointed at the GS-13 level, but the agency appointed him as a GS-12. PFR File, Tab 1 at 5-6. However, we agree with the administrative judge that, even if true, the appellant's disappointment with the job offer is not evidence of a constructive

---

[2] We think that the investigating officer's approach to this interpersonal conflict was more reasonable than the appellant's preferred approach, which would have been to treat the Master Divers as mutineers under the Uniform Code of Military Justice. PFR File, Tab 1 at 7.

[3] The petition for review generally proceeds as though the appellant had a supervisory role at some point and the agency later took him out of that role. We agree with the administrative judge that this was not the case.

removal because the appellant knowingly and voluntarily accepted the appointment at the GS-12 level. RID at 34.

The appellant argues that the Maintenance Officer attempted to kill him by having him fly to Japan for a medical evaluation. He states that the Maintenance Officer was under the (albeit mistaken) impression that he was likely to suffer fatal effects from his medical condition if he were to take that flight. PFR File, Tab 1 at 1, 12. We agree with the appellant that it was arguably somewhat odd for the Maintenance Officer to offer him a flight to Japan to determine whether it was safe for him to fly. RF, Tab 20 at 19. Nevertheless, we agree with the administrative judge that the Maintenance Officer "was giving the appellant options and letting the appellant tell him whether he was able to fly, whether he wanted a second opinion, etc." RID at 39. He did not order the appellant to fly to Japan. He merely offered the appellant assistance, which he made clear the appellant was free to decline. RF, Tab 20 at 19.

The appellant states that the Maintenance Officer denied him a promotion for not performing his supervisory duties at the same time that he signed a midyear performance review stating that the appellant was performing his duties satisfactorily. PFR File, Tab 1 at 5; RF, Tab 18 at 11-17. We agree with the administrative judge's assessment of this midyear performance evaluation; the tenor of the evaluation was that the appellant had made progress but there remained tasks to complete before the end of the year, which is unremarkable for a midyear appraisal. RID at 38; RF, Tab 18 at 16-17.

The appellant also argues that the Maintenance and Deputy Maintenance Officers downplayed his achievements and disparaged his performance because an Admiral and two Rear Admirals were pressuring them to get rid of him. PFR File, Tab 1 at 6, 11. He argues that this is the reason that the Deputy Maintenance Officer directed him to delete a laudatory email that he sent him. *Id.* at 6-7. As stated in the initial decision, however, there is no evidence to support the appellant's speculation that these Admirals were trying to get him

taken out of his position. RID at 43-44. As for the Deputy Maintenance Officer's email, his closing salutation of "Delete this email :-)" was obviously a joke. RF, Tab 20 at 10. This is particularly so considering the context of the email exchange and considering that the Deputy Maintenance Officer would probably not have sent this gratuitous email in the first place if he were worried about someone else reading it.

The appellant raises some issues about his appearance before a Promotion Advisory Board in the spring of 2014. The appellant provided information to the board about his accomplishments thus far in the Director of Diving Operations position. RF, Tab 18 at 50-51. However, on April 11, 2014, the board recommended against a promotion. The board's memorandum explained that, although the appellant was making progress on his performance plan requirements, there was "still much to be accomplished in several of the critical elements," and his accomplishments did not merit promotion at that time.[4] *Id.* at 56. On petition for review, the appellant argues that the decision on his career-ladder promotion should not have been subject to a Promotion Advisory Board, and he argues that the board was biased against him. PFR File, Tab 1 at 6-7.

We understand that it was unusual for a career-ladder promotion to go before a Promotion Advisory Board. However, the Deputy Maintenance Officer testified that the agency did so in the appellant's case because the appellant had complained about the way his chain of command was treating him, and the agency wanted to obtain a recommendation from an unbiased panel. RID at 16; RF, Tab 31-1, HA at 26:15 (testimony of the Deputy Maintenance Officer). The Deputy Maintenance Officer also testified that the appellant's performance at that time was "potentially" at the GS-13 level, but the appellant sabotaged himself by writing the Promotion Advisory Board an email "rant," complaining about the

---

[4] The Promotion Advisory Board's recommendation was subject to reconsideration every 6 months. RF, Tab 18 at 58.

entire process and objecting to the being in front of the board to begin with. RF, Tab 31-1, HA at 1:14:25 (testimony of the Deputy Maintenance Officer). He testified that the entire board found the email unprofessional, and it "probably killed any real chance" of the appellant receiving a promotion at that time. *Id.* at 1:14:40 (testimony of the Deputy Maintenance Officer). We find that this is a more likely explanation for the board's decision than the appellant's theory that the board members colluded with the Maintenance Officer to deny him a promotion. PFR File, Tab 1 at 7.

The appellant also contests the administrative judge's credibility determinations with respect to the written declaration of the Quality Assurance Director. PFR File, Tab 1 at 10-11. The Quality Assurance Director stated that the appellant was hired as a supervisor and performed supervisory duties until those duties were taken away from him and he was left with little consequential work. RF, Tab 20 at 13-15. He stated that the appellant's performance was good and he should have been promoted, but the Maintenance Officer retaliated by denying the appellant a promotion. *Id.* at 14-17. He stated that other personnel in the Maintenance Department made negative and unprofessional comments about the appellant. *Id.* at 15-18. The administrative judge found that the Quality Assurance Director's declaration was not credible because it was inconsistent with the great weight of the evidence, particularly evidence showing that the appellant never had any supervisory authority at any point. RID at 33. He also found that, although the Quality Assurance Director worked in the same office as the appellant, he was not within the appellant's chain of command, he had no basis to evaluate the appellant's performance, and he had no vantage to accurately describe the appellant's particular assignments and taskings. *Id.*

On review, the appellant argues that, considering the passage of time, the Quality Assurance Director's 2017 declaration was more credible than the hearing witnesses' 2024 testimony. PFR File, Tab 1 at 10. He further argues that, even though the Quality Assurance Director might not have been directly in the same

chain of command, the Maintenance Department was small, and he had ample opportunity to observe what was happening. *Id.* at 10. The appellant argues that, if the declaration were inaccurate, the agency should have submitted its own rebuttal declarations during the initial phase of the appeal, prior to remand. *Id.* at 10-11.

As for the agency's failure to submit rebuttal declarations when the appeal was first filed, this does not undermine the credibility of the agency's position. There would have been little point in the agency filing such declarations at that time because the Board will not consider an agency's rebuttal of an appellant's factual allegations at the jurisdictional stage. *See Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020). We have considered the remainder of appellant's arguments, but we find no basis to disturb the administrative judge's reasoned and explained demeanor-based credibility determinations. We find that, in resolving the credibility issues, the administrative judge appropriately considered the factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), and in determining the weight to assign the Quality Assurance Director's declaration, he appropriately considered the factors set forth in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981). RID at 3 n.1, 33.

The appellant argues that the administrative judge "determined somehow that [his] decision to leave [his] job was not what a reasonable person would do." PFR File, Tab 1 at 11. He describes the stress that he was experiencing at work, the health conditions that he was suffering, and the negative effects that his family was experiencing as a result. *Id.* at 11-13. He disputes the Diving and Salvage Officer's account of his work performance and argues that his chain of command provided him little or no meaningful work to do. PFR File, Tab 1 at 9-10.

However, the administrative judge did not find that the appellant's resignation was unreasonable. To the contrary, he found that "the appellant was

understandably disappointed and upset with his position at the agency," and "[h]is decision to resign and pursue other opportunities was reasonable given his dissatisfaction." RID at 46-47. We agree. The record shows that the appellant accepted the GS-12 Director of Diving Operations position based on his reasonable belief that it would entail supervisory responsibilities. The agency's failure to be clear from the outset about the duties and responsibilities of the position was not the appellant's fault, and it set the appellant up for disappointment.

Nevertheless, even if a choice is perfectly rational or even objectively the best choice, it does not necessarily mean that it is the only choice. The appellant has described dissatisfaction with work assignments, unfair criticism, and difficult or unpleasant working conditions, but such circumstances are generally insufficient to support a constructive removal claim. *See Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000); *cf. Bates v. Department of Justice*, 70 M.S.P.R. 659, 62-72 (1996) (describing "the continuous and unredressed pattern of harassment, which had escalated to a level potentially endangering [the appellant's] safety," and left her no reasonable alternative but to resign); *Heining v. General Services Administration*, 68 M.S.P.R. 513, 522-23 (1995) (describing the agency's retaliatory efforts to orchestrate a performance-based removal action, leading to the appellant's involuntary resignation). As explained in detail both above and in the remand initial decision, the appellant's central complaint was that the agency would not allow him to take on supervisory responsibility, and we find that this would not make a reasonable person in his position feel as though he had no choice but to resign. For the reasons explained in the remand initial decision, we agree with the administrative judge that, notwithstanding his difficult and unpleasant working conditions, the appellant's decision to resign was freely made. RID at 45-48.

**NOTICE OF APPEAL RIGHTS**[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.